IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| WESLEY JONES, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. CIV-13-285-D |
| | ) | |
| DAVID MILLER, Warden; R. WHITTEN, Security/Deputy Warden; D. BUTLER, Major/Chief of Security; K. JONES, Captain; JHON DOE, Lieutenant, JANE DOE, Sergeant; J. FRY, Correctional Officer; McINTYRE, Correctional Officer; CARAUANA, Correctional Officer; GEO GROUP INC./GEO CORRECTIONS, | ) ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) | |

## REPORT AND RECOMMENDATION

I.  **Complaint and procedural history.**

Plaintiff, a state inmate in the custody of the Oklahoma Department of Corrections (DOC), "was assigned and working as an orderly in the High security lock-down unit" at the Lawton Correctional Facility (LCF) on the morning of May 2, 2011. Doc. 1, at 3.[1]  Plaintiff maintains Defendants Fry,

---

[1]  Quotations in this report are reproduced verbatim unless otherwise indicated.  Page citations to the complaint are in sequential order and reflect this court's CMECF pagination.

McIntyre, and Carauna,[2] were among the correctional officers "running recreation for the inmates in the unit" and were accessing the inmates' cell doors in disregard of DOC operating procedures. *Id.* This, in Plaintiff's view, was the result: "When they made it to inmate [Randall Cook's] cell, his cell door flew open and [Cook] came charging right at me with two shanks . . . . I used the broomstick that I was cleaning with to defend myself; but I was unsuccessful and [was] viciously and violently stabbed four . . . times." *Id.* He contends the "correctional officers did nothing to stop [Cook]." *Id.*

In addition to the three Defendant correctional officers, Plaintiff names David Miller, Warden, and R. Whitten, Security/Deputy Warden, alleging they are legally responsible for the operation and the security operation, respectively, of LCF and for "the welfare of all the inmates in that prison." *Id.* at 1, 3. He also names D. Butler, Major/Chief of Security; K. Jones, Captain and correctional officer; Jhon Doe, correctional officer; and Jane Doe, correctional officer, and claims that each "is legally responsible for the supervision, security and safety of the staff and inmates." *Id.* at 4. Plaintiff's "list" of Defendants also includes "GEO Group INC./GEO Corrections: Business in Lawton, OK. All above Defendants work for and are employees of GEO GROUP/GEO

---

[2] Defendants advise this is the proper spelling of the Defendant correctional officer whom Plaintiff identifies as Defendant Carijuana. Doc. 31, at 6. The caption of the action now reflects the correct spelling.

Corrections." *Id.* at 2. Proceeding under 42 U.S.C. § 1983, he asserts the violation of his Eighth and Fourteenth Amendment rights and seeks monetary and declaratory relief. *Id.* at 5-6, 7.

Consistent with United States District Judge Timothy D. DeGiusti's referral of the case for initial proceedings, *see* 28 U.S.C. § 636(b)(1)(B), (C), the undersigned Magistrate Judge ordered LCF officials to prepare a Special Report to develop the record. Doc. 12. *See Martinez v. Aaron*, 570 F.2d 317, 319-20 (10th Cir. l978) (per curium). LCF officials subsequently submitted their Special Report, Doc. 30, and Defendants filed a Motion to Dismiss/Motion for Summary Judgment grounded, in part, on Plaintiff's failure to exhaust his administrative remedies. Doc. 31. Thereafter, Plaintiff sought and the undersigned granted three extensions of time to respond to the motion. Docs. 32, 34, 39, 40, 41, 42. Plaintiff ultimately filed a response along with an Affidavit of Plaintiff in Support of his Civil Rights Complaint and Plaintiff's Statement of Disputed Material Facts. Docs. 44, 45, 46.

After careful review of all filings of record, the undersigned recommends the entry of summary judgment in favor of Defendants because Plaintiff failed to properly exhaust his administrative remedies.

## II. Standard of review.

Summary judgment shall be granted "if the movant shows that there is no

genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In considering a motion for summary judgment, the court views the facts and inferences drawn from the record in the light most favorable to the nonmoving party. *Burke v. Utah Transit Auth. & Local 382*, 462 F.3d 1253, 1258 (10th Cir. 2006) (quotation omitted). And, while the court liberally construes a pro se plaintiff's complaint, that plaintiff must adhere to the same rules of procedure that are binding on all litigants. *Kay v. Bemis*, 500 F.3d 1214, 1218 (10th Cir. 2007). Thus, strict adherence by a pro se plaintiff to the requirements of Fed. R. Civ. P. 56 is required. With respect to those requirements, the Supreme Court instructs that

> the plain language of Rule 56 . . . mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be "no genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial.

*Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).

Additionally, when, as here, Defendants assert an affirmative defense – the failure to exhaust administrative remedies – in a motion for summary judgment, they "must demonstrate that no disputed material fact exists regarding the affirmative defense asserted." *Hutchinson v. Pfeil*, 105 F.3d 562,

4

564 (10th Cir. 1997). "If the defendant[s] meet[] this initial burden, the plaintiff must then demonstrate with specificity the existence of a disputed material fact." *Id*. "If the plaintiff fails to make such a showing, the affirmative defense bars his claim, and the defendant[s] [are] then entitled to summary judgment as a matter of law." *Id*.

## III. Analysis.

### A. Exhaustion of administrative remedies.

The Prison Litigation Reform Act of 1995 (PLRA) requires a prisoner to exhaust all available administrative remedies before resorting to a § 1983 action in federal court. Specifically, 42 U.S.C. § 1997e(a) provides as follows:

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

*Id*. "[E]xhaustion is mandatory under the PLRA and . . . unexhausted claims cannot be brought in court." *Jones v. Bock*, 549 U.S. 199, 211 (2007). A prisoner, such as Plaintiff, successfully exhausts administrative remedies by completing the administrative review process established by the prison grievance procedure. *Id*. at 218. "An inmate who begins the grievance process but does not complete it is barred from pursuing a § 1983 claim under PLRA for failure to exhaust his administrative remedies." *Jernigan v. Stuchell,* 304 F.3d 1030, 1032 (10th Cir.

5

2002). "To exhaust administrative remedies an inmate must properly comply with grievance procedures; substantial compliance is insufficient." *Fields v. Okla. State Penitentiary*, 511 F.3d 1109, 1112 (10th Cir. 2007). Courts, however, "are obligated to ensure that any defects in exhaustion were not procured from the action or inaction of prison officials." *Aquilar-Avellaveda v. Terrell*, 478 F.3d 1223, 1225 (10th Cir. 2007).

### B.    LCF's exhaustion procedure.

Defendants maintain, and Plaintiff does not argue otherwise, that prior to initiating this lawsuit Plaintiff was required to exhaust his administrative remedies pursuant to the DOC Offender Grievance Process, OP-090124. Doc. 31, at 4; Doc. 44, at 2, Exs. A-K.[3] The last step in that procedure – the step implicated in this case – explains the appeal process an offender must follow with the DOC's Administrative Review Authority (ARA) in order to challenge a

---

[3]    Despite its obvious import, neither LCF officials nor Defendants supplied a copy of the procedure in effect during the relevant time period, the time period following the May 2, 2011 incident underlying Plaintiff's complaint. *See* Doc. 1, at 3. The current version of the procedure – effective Jan. 29, 2013 – is available at http://www.ok.gov/doc/documents/op090124.pdf. The undersigned has reviewed that version and the pertinent version. (A publically-filed copy of this version is available in numerous cases including *Smith v. Wideman*, No. CIV-12-1365-HE, Doc. 29, at Ex. 1 (OP-090124, eff. May 24, 2011) (W.D. Okla.).) On comparison of these two versions, no substantive difference in the provisions that bear on Plaintiff's administrative appeal filings exists.

reviewing authority's response to a grievance. OP-090124, § VII.[4] An offender must submit an appeal to the ARA "within 15 calendar days of receipt of the reviewing authority's response or any amended response." *Id*. § VII.B.

### C. Whether Plaintiff exhausted his administrative remedies.

#### 1. Defendants' argument and evidence.

Defendants assert as undisputed fact that Plaintiff failed to exhaust his administrative remedies. Doc. 31, at 3. They ground their affirmative defense on the findings of the Special Report investigation, verified by Bill Gibson, the Executive Assistant to the Warden at LCF, and supported by the affidavit of Mark Knutson, the ARA manager. *Id*. at 4; Doc. 30, at 4, 5, Att. 4, at 1.

Mr. Knutson avers he has access to the offender grievance records maintained at ARA and has reviewed Plaintiff's submissions. Doc. 30, Att. 4, at 1. He discovered that Plaintiff submitted a grievance appeal form to the ARA on November 16, 2011. *Id*. It was "unanswered" because Plaintiff was "outside the required time frames for filing his appeal." *Id*.[5] On December 7, 2011, Plaintiff submitted a request to appeal out of time to the ARA, which the ARA

---

[4] In this case, the reviewing authority is the head of the facility – the warden – "where the incident occurred and to whom the grievance is first submitted." OP-090124, § I.E.

[5] "The [ARA] has the authority to return . . . grievance appeals unanswered . . . when they fail to be filed in accordance with this procedure." OP-090124, § VII.B.1.e.

7

denied. *Id.* According to Mr. Knutson, Plaintiff "has failed to properly exhaust his administrative remedies with ARA." *Id.*

The undersigned agrees. The documentation supporting Mr. Knutson's affidavit includes Plaintiff's November 16, 2011 appeal form. *Id.* at 4.[6] Plaintiff indicated on the form that he received the reviewing authority's response to his grievance on October 12, 2011, over thirty days before he appealed. *Id.* Because Plaintiff failed to submit his appeal to the ARA "within 15 calendar days of receipt of the reviewing authority's response or any amended response," OP-090124, § VII.B., his appeal was untimely and the ARA acted in accordance with procedure in returning the grievance "unanswered." Doc. 30, Att. 4, at 3.

Plaintiff's attempt to appeal out of time also fails. *See id.* at 8. This avenue is available "[i]f a grievance has been denied by the reviewing authority <u>and</u> the [ARA] due to the grievance not being submitted in a timely manner . . . ." OP-090124, § XII.A. That was not the case here, and Plaintiff did not claim it was – he did not enter any "[d]ate denied as untimely by the facility head" on the form. Doc. 30, Att. 4, at 8. Once again, the ARA acted in accordance with procedure in denying Plaintiff's request.

---

[6] Plaintiff signed the appeal form on November 14, 2011. Doc. 30, Att. 4, at 4. But because there is no mailbox rule under the procedure, *see* OP-090124, § XII.E., the appeal was considered submitted on the date of receipt by the ARA, November 16, 2011.

8

By establishing that Plaintiff failed to properly complete the administrative review process – that is, by obtaining a final ruling by the ARA on consideration of his grievance with LCF – Defendants have met their initial burden of demonstrating that no disputed material fact exists regarding their affirmative defense of failure to exhaust.

### 2. Plaintiff's argument and evidence.

Plaintiff claims in conclusory fashion that "[w]hether [he] exhausted his administrative remedies" is disputed. Doc. 46. But because Defendants met their initial burden on the exhaustion issue, the burden is now on Plaintiff to "demonstrate with *specificity* the existence of a *disputed* material *fact*." *Hutchinson*, 105 F.3d at 564 (emphasis added). To this end, Plaintiff maintains that even though he was not required to exhaust administrative remedies because "[m]onetary compensation for physical injury resulting form a constitutional tort is not available through the grievance procedure," he "still exhausted his remedies." Doc. 44, at 2. He asserts "that Prison Officials tryed to hinder plaintiff in exhausting his remedies by stating that 'you cannot grieve this to us you need to file this through a legal entity' (see xehibit E)." *Id.* at 2-3. He points to his "exhibits A-K, for proof" that he "followed all the steps outlined in the DOC grievance procedures, Op-090124." Doc. 45, ¶ 3.

Plaintiff's Exhibit E is a checkbox form he received from the LCF

Grievance Coordinator referring to his September 26, 2011 grievance, Exhibit D, in which he complained about the May 2, 2011 incident. Doc. 44, at Exs. D, E.[7] The coordinator had checked the box that advises: "This grievance is unanswerable as there are no time frames specified for the alleged action(s) to have occurred[.]" *Id.* Ex. E. And, as Plaintiff observes, the coordinator had also indicated that "[y]ou cannot grieve this is us. You need to file through a legal entity." *Id.*

Plaintiff's next two exhibits establish that after this first grievance was returned unanswered on October 11, 2011, *id.*, he submitted another grievance on October 14, 2011, adding that the May 2, 2011 incident took place "between the hours of 10 & 11 A.M." *Id.* Ex. F. On October 24, 2011, the LCF grievance coordinator returned the second grievance "unanswered," explaining that "[y]ou have an active grievance on this issue." *Id.* Ex. G.

Plaintiff offers as his only remaining evidence the same four ARA documents that Defendants already successfully used to meet their initial burden of establishing Plaintiff's failure to complete the administrative review process by failing to obtain a final ruling by the ARA on his grievance with LCF. *Id.* Exs. H, I, J, K.

---

[7] Exhibits A, B, and C are Plaintiff's requests to staff. Doc. 44, at Exs. A, B, C.

### 3. Defendant's affirmative defense bars Plaintiff's claims.

Rather than demonstrating the existence of a disputed material fact, Plaintiff's ARA evidence eliminates any factual dispute surrounding his allegation that "Prison Officials tryed to hinder plaintiff in exhausting his remedies by stating that 'you cannot grieve this to us you need to file this through a legal entity.'" Doc. 44, at 2-3. His evidence proves that any such attempt was unsuccessful – he proceeded on to file both an appeal and a request to file out of time with the ARA, neither, though, in keeping with the requisite procedure. *Id.* Exs. H, I, J, K.

Plaintiff initiated the DOC administrative grievance procedure with respect to the claims he now asserts in this Court, receiving unfavorable results. He appealed those results to the ARA but not within the prescribed time period. "To exhaust administrative remedies an inmate must properly comply with grievance procedures; substantial compliance is insufficient." *Fields*, 511 F.3d at 1112. The ARA, instead of considering and ruling on Plaintiff's grievance appeal, returned it to him, unanswered, finding it untimely. Consequently, Plaintiff failed to secure the final ruling by the ARA that would have "conclude[d] the internal administrative remedy available to the offender within the jurisdiction of the [DOC]." OP-090124, § VII.D.1. "An inmate who begins the grievance process but does not complete it is barred from pursuing a § 1983

claim under PLRA for failure to exhaust his administrative remedies." *Jernigan,* 304 F.3d at 1032.

Defendants have affirmatively established Plaintiff's failure to exhaust his administrative remedies prior to initiating this § 1983 action and are entitled to summary judgment in their favor as a result.

**IV.  Recommendation and notice of right to object.**

For the reasons stated, the undersigned recommends Defendants' Motion to Dismiss/Motion for Summary Judgment, Doc. 31, be granted and judgment be entered in their favor and against Plaintiff and that all claims asserted against any defendant in this case be dismissed.  The undersigned further recommends Plaintiff's motion for appointment of counsel, Doc. 43 – a request Plaintiff filed contemporaneously with his summary judgment response brief – be denied as moot.

The undersigned advises the parties of their right to object to this report and recommendation by the 21st day of July, 2014, in accordance with 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b)(2).  The undersigned further advises the parties that failure to make timely objection to this report and recommendation waives their right to appellate review of both factual and legal issues contained herein.  *See Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991).

This Report and Recommendation disposes of all issues referred to the undersigned in this case.

IT IS SO ORDERED this 1st day of July, 2014.

_____
SUZANNE MITCHELL
UNITED STATES MAGISTRATE JUDGE