# IN THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| WESLEY JONES,       ) | |
|       ) | |
|     Plaintiff,    ) | |
|       ) | |
| vs.       ) | Case No. CIV-13-285-D |
|       ) | |
| DAVID MILLER, Warden; R.   ) | |
| WHITTEN, Security/Deputy   ) | |
| Warden; D. BUTLER, Major/Chief  ) | |
| of Security; K. JONES, Captain;   ) | |
| JHON DOE, Lieutenant, JANE DOE, ) | |
| Sergeant; J. FRY, Correctional   ) | |
| Officer; McINTYRE, Correctional  ) | |
| Officer; CARAUANA, Correctional  ) | |
| Officer; GEO GROUP INC./GEO   ) | |
| CORRECTIONS,     ) | |
|       ) | |
|     Defendants.   ) | |

## REPORT AND RECOMMENDATION

### I.    Complaint.

Plaintiff, a state inmate in the custody of the Oklahoma Department of Corrections, "was assigned and working as an orderly in the High security/lockdown unit" at the Lawton Correctional Facility (LCF) on the morning of May 2, 2011. Doc. 1, at 3.[1] He claims Defendants Fry, McIntyre, and Carauna,[2] were

---

[1]    Quotations in this report are reproduced verbatim unless otherwise indicated. Plaintiff's use of the uppercase is altered in part. Citations reflect this Court's CM/ECF designation and pagination.

[2]    Defendants advise this is the proper spelling of the Defendant correctional officer whom Plaintiff identifies as Defendant Carijuana. Doc. 31,

(continued...)

among the correctional officers "running recreation for the inmates in the unit" and were accessing the inmates' cell doors in disregard of DOC operating procedures. *Id.* This, in Plaintiff's words, was the result: "When they made it to inmate [Randall Cook's] cell, his cell door flew open and [Cook] came charging right at me with two shanks . . . . I used the broomstick that I was cleaning with to defend myself; but I was unsuccessful and [was] viciously and violently stabbed four . . . times." *Id.* He contends the "correctional officers did nothing to stop [Cook]." *Id.*

In addition to the three Defendant correctional officers, Plaintiff names David Miller, Warden, and R. Whitten, Security/Deputy Warden, alleging they are legally responsible for the operation and the security operation, respectively, of LCF and for "the welfare of all the inmates in that prison." *Id.* at 1, 3. He also names D. Butler, Major/Chief of Security; K. Jones, Captain and correctional officer; Jhon Doe, correctional officer; and Jane Doe, correctional officer, and claims that each "is legally responsible for the supervision, security and safety of the staff and inmates." *Id.* at 4. Plaintiff's "list" of Defendants also includes "GEO Group INC./GEO Corrections: Business in Lawton, OK. All above Defendants work for and are employees of GEO GROUP/GEO

---

[2](...continued)
at 6. The caption of the action now reflects the correct spelling.

Corrections." *Id.* at 2. Proceeding under 42 U.S.C. § 1983, he asserts the violation of his Eighth and Fourteenth Amendment rights and seeks monetary and declaratory relief. *Id.* at 5-6, 7.

## II. Procedural history.

### A. First motion for summary judgment.

Consistent with United States District Judge Timothy D. DeGiusti's referral of the case for initial proceedings, *see* 28 U.S.C. § 636(b)(1)(B), (C), the undersigned Magistrate Judge ordered LCF officials to prepare a Special Report to develop the record. Doc. 12; *see Martinez v. Aaron*, 570 F.2d 317, 319-20 (10th Cir. 1978) (per curiam). LCF officials subsequently submitted their Special Report, Doc. 30, and Defendants filed a Motion to Dismiss/Motion for Summary Judgment grounded, in part, on Plaintiff's failure to exhaust his administrative remedies. Doc. 31. Thereafter, Plaintiff sought and the undersigned granted three extensions of time to respond to the motion. Docs. 32, 34, 39, 40, 41, 42. Plaintiff ultimately filed a response with an Affidavit of Plaintiff in Support of his Civil Rights Complaint and Plaintiff's Statement of Disputed Material Facts. Docs. 44, 45, 46.

The undersigned recommended the entry of summary judgment in favor of Defendants because Plaintiff failed to exhaust his available administrative remedies. Doc. 48. Judge DeGiusti disagreed and once again referred the

matter to the undersigned.  Doc. 53.

**B.  Second motion for summary judgment and discovery issues.**

In denying Defendants' Motion to Dismiss/Motion for Summary Judgment, Judge DeGiusti "note[d] that Defendants raised additional grounds for dismissal/summary judgment in their Motion [Doc. No. 31] not addressed by the Magistrate Judge in light of her recommendation on the issue of exhaustion of administrative remedies [and] granted [Defendants] leave of Court to file a second motion, if deemed necessary, under Fed. R. Civ. P. 56.  *See* LCvR 56.1." Doc. 53, at 9.

On September 11, 2014, the undersigned established Monday, November 3, 2014 as "[t]he deadline for completion of discovery" having

> considered the fact that the parties were initially instructed on May 2, 2013, that "[n]o . . . discovery shall be filed . . . until the Special Report had been filed . . . ."  Doc. 12, at ¶ 5.  That report was filed on September 12, 2013, and the parties have been free to engage in discovery since that date.  Doc. 30.

Doc. 54, at 1.  Summary judgment motions were due no later than December 15, 2014.  *Id.* at 2.

On October 21, 2014, Plaintiff filed his third motion to appoint counsel. Doc. 56.  The undersigned denied the motion on October 23, 2014, finding that Plaintiff's "current request is substantially identical to his first and second," the first denied by the undersigned and the second by Judge DeGiusti.  Doc. 57, at

2 n.1.

Then, on October 31, 2014, the Friday before the Monday deadline for completion of discovery, Plaintiff filed his First Request for Production of Documents. Doc. 58.[3] Defendants objected to the request and sought a protective order. Doc. 60. They argued that because Fed. R. Civ. P. 34 provides for a thirty-day response period after the receipt of a request for production, Plaintiff's Friday, October 31, 2014 request did not comport with the terms of the undersigned's order for the *completion* of discovery by Monday, November 3, 2014. *Id.* Defendants also objected to Plaintiff's requests on relevancy, burdensomeness, and security grounds. *Id.* Plaintiff sought and received an extension of time – until December 26, 2014 – to respond to Defendants' objection and motion. Docs. 61, 62.

---

[3]     Based on postmark, Plaintiff appears to have mailed his production request to the court on October 30, 2014. Doc. 58, at Att. 1. His certificate of service to Defendants' counsel is undated. Doc. 58, at 2. In any event, he did not purport to use the prison-mail system, and the request is considered as having been filed on Friday, October 31, 2014, the date it was file-stamped by the court clerk. *See Bynum v. Municipality, City & Cnty. of Denver*, 550 F. App'x 560, 561 n.1 (10th Cir. 2013).

Defendants timely filed their second motion for summary judgment by the December 15, 2014 deadline. Doc. 63.[4] Plaintiff then responded to Defendants' motion for protective order and objection to his request for production of documents by (1) arguing that Defendants had failed to respond to his document request; (2) submitting that "[a]ll documents requested are germane to my claim and being denied any of the requested documents would be detfimental to proving my case"; (3) noting that "defendants make a claim that plaintiff's request is untimely and burdensome," and then (4) addressing only burdensomeness; and finally, (5) requesting that the court order Defendants to comply with his discovery request. Doc. 64, at 1-2.

After receiving a requested extension of his time to respond to Defendants' second motion for summary judgment, Docs. 65, 66, Plaintiff filed the following objection:

> Plaintiff objects to consideration of the defendants second motion for summary judgment on the grounds that it presents the identical contentions of fact and law presented by Defendant's first motion for summary judgment filed on 12-15-14 [Doc.63], which motion was denied by the court on the merits. Wherefore, plaintiff contends that Defendant's second motion for summary judgment should be denied.

---

[4] Defendants' second motion is identical to their first, save for the deletion of the first motion's fifth stated undisputed material fact and related proposition, both of which had been directed to their claim that Plaintiff failed to exhaust his available administrative remedies before bringing this action. *See* Doc. 31, at 3-5.

Doc. 67.

Several days after submitting his objection, Plaintiff filed a Motion for Continuance of Summary Judgment to Permit Discovery. Doc. 68. He requested relief "pursuant to F.R.C.P rule 56(f)" and stated that

> [i]n support of this motion, the plaintiff notes that no discovery from Defendants has been obtained and many of the issues are intensively fact-based and much of the knowledge relevant to dispute is uniguely in the hands of the defendant. For example, in order to determine who the John Doe and Jane Doe defendants are in my case I need the Duty roster for the day I was attacked. In further support of this motion, the plaintiff submitted a Request for Production of Documents to Defendants on the 10th of October 2014, and have yet to receive any of the requested documents see[DOC.58].

*Id.* at 1.

The following day, and without referencing the objection to the summary judgment motion he had just filed, Plaintiff requested additional time to respond to the motion, citing to a week-long placement in segregation that had ended some ten days earlier. Doc. 69. Before the undersigned had the opportunity to consider his application, Plaintiff moved to compel production of the documents sought in his October 31, 2014 request. Doc. 70. Two days later, he submitted an Amended Motion for Continuance of Summary Judgment to Permit Discovery to correct the stated date of his original request for production of documents. Doc. 71.

The undersigned has detailed the pending discovery and timing issues – non-dispositive issues that the undersigned would otherwise routinely resolve by order under Judge DeGiusti's referral of the matter for initial proceedings – having concluded that these issues are so entwined with the pending summary judgment motion that they should be addressed together and by recommendation.

## III. Analysis.

### A. Plaintiff is not entitled to discovery and Defendants' second motion for summary judgment is at issue.

#### 1. Fed. R. Civ. P. 56(d).

In objecting to Defendants' current motion for summary judgment, Plaintiff maintains "the defendants second motion for summary judgment . . . presents the identical contentions of fact and law presented by Defendant's first motion for summary judgment." Doc. 67, at 1. Plaintiff responded to the merits of that first motion on December 31, 2013 – following a three and a half month period when he was free to conduct discovery, *see* Doc. 54, at 1 – claiming in part that "[d]igital footage of the attack occurring on May 2, 2011 will prove all counts in plaintiff complaint" and invoking "Rule 56(D)(1) and 56(F) of the Federal Rules of Civil Procedure." Doc. 44, at 1, 5.

Over a year later, this time when confronting Defendants' second motion

for summary judgment – a motion he concedes mirrors the first, Doc. 67, at 1, – and once again invoking "F.R.C.P rule 56(f)" and his need for discovery, "Plaintiff . . . moves for a continuance of the disposition of the motion for summary judgment filed by Defendants to permit discovery to be had." Doc. 71, at 1.[5] This time, he attempts to forestall the summary judgment process by claiming he "need[s] the duty roster for the day I was attacked" "in order to determine who the John Doe and Jane Doe defendants are in my case." *Id.*

Plaintiff did not support his request for relief "pursuant to F.R.C.P rule 56(f)," *id.*, by the requisite "affidavit or declaration." Fed. Rule Civ. P. 56(d).[6] Plaintiff deliberately chose this route, defending it in his "accompanying memorandum of law." Doc. 71, at 1. But,

> while pro se litigants are entitled to a liberal reading of their filings, *Haines v. Kerner*, 404 U.S. 519, 520-21, 92 S. Ct. 594, 30 L.Ed.2d 652 (1972) (per curiam), they still must follow the established procedures governing Rule 56[d] motions, *DiCesare v. Stuart*, 12 F.3d 973, 979 (10th Cir. 1993). "A party seeking to defer a ruling on summary judgment under Rule 56[d] must file an affidavit [or declaration] that explains why facts precluding summary judgment cannot be presented. This includes identifying the probable facts not available and what steps have been taken to obtain these facts."

---

[5]     *See also* Doc. 68, at 1. The undersigned cites to Plaintiff's amended motion. Doc. 71.

[6]     Plaintiff relies on Fed. R. Civ. P. 56(f) despite recognizing over a year ago that the applicable provision is now codified at Fed. R. Civ. P. 56(d). *See* Doc. 44, at 1, 5.

*Abdulhaseeb v. Calbone*, 600 F.3d 1301, 1310 (10th Cir. 2010) (final citation omitted).

Not only does Plaintiff's motion fail for lack of the required affidavit or declaration, but also "[a] party may not invoke Rule 56[d] by simply stating that discovery is incomplete but must state with specificity how the additional material will rebut the summary judgment motion." *Id.* (internal quotation marks omitted). Here, Plaintiff states that "in order to determine who the John Doe and Jane Doe defendants are in my case I need the duty roster for the day I was attacked." Doc. 71, at 1. He does not explain how the simple identification of the Doe Defendants equates with evidence of their deliberate indifference, the issue implicated by the pending summary judgment motion. *See Abdulhaseeb*, 600 F.3d at 1310.

### 2. Defendants' motion for protective order and Plaintiff's motion to compel.

In this same vein, Defendants maintain they would be unduly burdened by responding to Plaintiff's First Request for Production of Documents and request a protective order under Fed. R. Civ. P. 26(c). Doc. 60. They point to the fact that Plaintiff has had ample opportunity to conduct discovery yet failed to even start the process until only three days remained before the date when all discovery was to be *completed*. *Id.* at 1. Plaintiff summarily responds that "[a]ll

documents requested are germane to my claim and being denied any of the requested documents would be detfimental to proving my case." Doc. 64, at 1. And, while he acknowledges Defendants' "claim that [his] request is untimely," he does not dispute it. *Id.* at 2.

The record demonstrates there is "good cause" for the entry of an order protecting Defendants from Plaintiff's belated use – if not abuse – of the discovery process. Fed. R. Civ. P. 26(c)(1). The first of Plaintiff's document requests illustrates his pattern of invoking discovery, not to establish the essential elements of his claims but as a litigation tactic.[7]

Plaintiff requests production of video footage from the date he was attacked by another inmate. Doc. 58, at 1. But, as just discussed, he maintained on December 31, 2013 that "[d]igital footage of the attack occurring on May 2, 2011 will prove all counts in plaintiff complaint" and invoked Fed. R. Civ. P. 56(d) as a basis for denying Defendants' first motion for summary judgment. Doc. 44, at 1, 5. Thereafter, to the undersigned's knowledge,[8] Plaintiff did not

---

[7] Plaintiff also requests documents including a duty roster from the day of the attack, reports about the attacks, security and staffing guidelines for the unit where the attack occurred, all prison violence logs dating back to January 1, 2009, and his medical records from the time his incarceration began. Doc. 58.

[8] A court is typically unaware of the discovery undertaken by the parties. Fed. R. Civ. P. 5(d)(1) mandates that "the following discovery requests
(continued...)

request production of such footage – or anything else – until October 31, 2014, the Friday before the Monday deadline for the completion of discovery and ten months after first citing his need for the footage in order to effectively oppose Defendants' initial summary judgment motion.

Similarly, Plaintiff does not dispute Defendants' contention that his document request was untimely under the rules of discovery as, given the thirty-day response time, discovery would not be *completed* by the November 3, 2014 deadline. *See* Doc. 64. His document request was also untimely as a practical matter and, considering the history of this case, specious.

Defendants' initial summary judgment motion challenged, in part, whether Plaintiff could present evidence satisfying the subjective component of the deliberate indifference test, a challenge Plaintiff had no reason to assume would be abandoned in Defendants' second motion. *See* Doc. 31. He was on notice of his need for discovery from the individual Defendants to meet his burden. But, even assuming it was reasonable for Plaintiff to serve an eleventh-hour document request in anticipation that Defendants would deem it timely

---

[8](...continued)
and responses must not be filed until they are used in the proceeding or the court orders filing: depositions, interrogatories, requests for documents or tangible things or to permit entry onto land, and requests for admission." Although Plaintiff improperly submitted his document request for filing, the undersigned did not order it stricken from the record, anticipating Defendants' objection as to the timing of the request.

and would produce the requested documents thirty days later, he was informed by Fed. R. Civ. P. 34(b)(2)(A) that he would not receive the materials until *after* the discovery deadline.  By waiting until the Friday before the Monday discovery deadline to serve his document request, Plaintiff foreclosed his opportunity to make use of information gleaned from the requested document production to develop evidence from the individual Defendants through interrogatory, request for admission, or, if necessary, by deposition in order "to establish the existence of an element essential to [his] case, and on which [he bears] the burden of proof at trial."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

Under these circumstances, Defendants should not be compelled to undertake the burden and expense of producing documents pursuant to Plaintiff's belated request.

> **3.    Plaintiff's request for an extension of time to permit him to further respond to Defendants' summary judgment motion.**

The undersigned granted Plaintiff's first request for additional time to respond to Defendants' motion for summary judgment, giving him until February 5, 2015.  Docs. 65, 66.  Then on January 30, 2015,  despite having filed his objection to the motion several days earlier, Plaintiff requested another thirty-day extension, citing only to his release from segregation on January 20, 2015.  Doc. 69.  Plaintiff failed to explain why the fifteen-day period between his

release from segregation and his already extended February 5, 2015 deadline was insufficient and, in undersigned's view, has failed to demonstrate "good cause" for a second extension. Fed. R. Civ. P. 6(b)(1).[9] Plaintiff fully responded to Defendants' first motion for summary judgment – a motion he describes as "identical" to the current motion – and the undersigned has considered those responses in the recommended disposition of the current motion. Docs. 44, 45, 46, 67.

The undersigned recommends that Judge DeGiusti grant Defendants' motion for protective order, Doc. 60; deny Plaintiff's Motion (and Amended Motion) for Continuance of Summary Judgment to Permit Discovery, Docs. 68, 71; deny Plaintiff's motion for an extension of time to file a second response to the motion for summary judgment, Doc. 69; and deny Plaintiff's Motion for an Order Compelling Discovery, Doc. 70.

## B.    Standard of review.

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In considering a motion for summary judgment, the court views the facts and inferences drawn from the record in the

---

[9]     Plaintiff failed to maintain as he did in his first request for an extension he would "not be able to meet the deadline" without the extension. Docs. 65, at 1; 69.

light most favorable to the nonmoving party. *Burke v. Utah Transit Auth. & Local 382*, 462 F.3d 1253, 1258 (10th Cir. 2006) (quotation omitted). And, while the court liberally construes a pro se plaintiff's complaint, that plaintiff must adhere to the same rules of procedure binding on all litigants. *Kay v. Bemis*, 500 F.3d 1214, 1218 (10th Cir. 2007). Thus, strict adherence by a pro se plaintiff to the requirements of Fed. R. Civ. P. 56 is required. Regarding those requirements, the Supreme Court instructs that

> the plain language of Rule 56[] mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be "no genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial.

*Celotex*, 477 U.S. at 322-23.

## C. Plaintiff fails to establish the existence of elements essential to his claims.

### 1. Failure to protect.

"[P]rison officials have a duty to protect prisoners from violence at the hands of other prisoners." *Farmer v. Brennan*, 511 U.S. 825, 833 (1994) (internal quotation marks and ellipsis omitted). Here, Defendants concede Plaintiff "was attacked by inmate Cook on May 2, 2011" and frame Plaintiff's

first claim as "an Eighth Amendment claim for failure to protect him from the attack by inmate Cook." Doc. 63, at 3. "It is not, however, every injury suffered by one prisoner at the hands of another that translates into constitutional liability for prison officials responsible for the victim's safety." *Farmer*, 511 U.S. at 834.

The court evaluates a failure to protect claim under the Eighth Amendment deliberate indifference standard. *Wilson v. Seiter*, 501 U.S. 294, 303 (1991). That test has two components: Plaintiff "must show that he [was] incarcerated under conditions posing a substantial risk of serious harm[,] the objective component, and that the prison official was deliberately indifferent to his safety, the subjective component." *Verdecia v. Adams*, 327 F.3d 1171, 1175 (10th Cir. 2003) (internal quotation marks omitted). "The subjective component of the deliberate indifference test requires that, before liability can be imposed, a prison official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* (internal quotation marks omitted).

A negligent failure to protect inmates from assaults by other inmates is not actionable under the Eighth Amendment. *Farmer*, 511 U.S. at 835. "[A]n official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation," does not constitute a violation of the

Eighth Amendment. *Id.* at 838.

In his verified complaint, Plaintiff alleges he "was assigned and working as an orderly in the High security/lock down unit on house four pod C" and that Defendants Fry, McIntyre and Carauana "were disregarding the Oklahoma Department of Corrections operating procedures for accessing the inmates doors" and "[w]hen they made it to inmate Cook's cell, his cell door flew open and he came charging right at me with two shanks . . . ." Doc. 1, at 3. Then, in his unverified response to Defendants' first motion for summary judgment, Plaintiff maintains that "Defendants knew of the substantial risk of serious harm to Plaintiff due to the classification of the inmates housed in unit 4-C also known as ISU." Doc. 44, at 3. Finally, in his Affidavit of Plaintiff in Support of His Civil Rights Complaint, Plaintiff repeats the allegations of his complaint and states that "Unit 4-C was known as the Intensive Supervision Unit a phase program and the inmates housed in 4-C were classified in the Security Threat Group." Doc. 45, at 1.

At most, Plaintiff's factual allegations are a statement of his belief that Defendants should have known of a risk to his safety. But Plaintiff must demonstrate that Defendants actually did know of a risk and yet with deliberate indifference failed to protect him. *See Verdecia*, 327 F.3d at 1176. Defendants are entitled to summary judgment on this claim.

## 2.     Equal protection.

In his second claim, Plaintiff generally alleges that his "[r]ight to equal protection was violated by defendant's indifference to protect offender under their care and custody . . . ." Doc. 1, at 5. Specifically, he claims that

> Defendant's GEO/LCF has a history of indifference to offenders need for protection under their care and custody. That is well documented since the opening of the Lawton Corr. Facility in September of 1998. This indifference has lead to several offenders deaths, hospitalization and transfer after the facts have been known to the defendant's prior to each assault. Which violates Plaintiff's Fourteenth and Eighth Amendment rights under the U.S Constitution.

*Id.*

Then, in his unverified response to the challenge made to his equal protection claim by Defendants in their first motion for summary judgment, Petitioner states that "ISU inmates and general population inmates are classified differently due to penological purposes, Defendants made a distinction between Plaintiff and inmate Cook; requiring Defendants to give Plaintiff a different level of safety from the ISU inmates." Doc. 44, at 4.

Plaintiff's equal protection allegations defy meaningful analysis. He appears to conflate equal protection of the law under the Fourteenth Amendment with physical protection of an inmate under the Eighth Amendment. "An equal protection violation occurs when the government treats

someone differently than another who is similarly situated." *Penrod v. Zavaras*, 94 F.3d 1399, 1406 (10th Cir. 1996) (per curiam). Plaintiff's factual allegations do not suggest disparate treatment due to suspect classification or that any "distinction between himself and other inmates was not reasonably related to some legitimate penological purpose." *Templeman v. Gunter*, 16 F.3d 367, 371 (10th Cir. 1994).

Plaintiff fails to make any showing that his rights to equal protection under the Fourteenth Amendment were violated, and summary judgment in Defendants' favor is appropriate.

3. **"Failure to train and supervise; and general negligence. Eighth Amendment violation."** Doc. 1, at 6.

As supporting facts for this final claim, Plaintiff alleges that

Defendant's David Miller, R. Witten, D. Butler, K. Jones and Lt. Jhon Doe, Sgt. Jane Doe's failure to train and supervise violated plaintiff Jones rights and constituted cruel and unusual punishment under the Eighth Amendment of the U.S. Constitution.

Defendant's J. Fry, McIntyre and Carijuana's general negligence violated plaintiff Jones rights and constituted cruel and unusual punishment under the Eighth Amendment of the U.S. Constitution.

*Id.*

Defendants request summary judgment, maintaining that "Plaintiff has failed to establish personal participation by Defendants Miller, Whitten, Butler and Jones . . . ." Doc. 63, at 9. In his unverified response to Defendants' first motion for summary judgment, Plaintiff newly claims that "Defendants Miller, Whitten, Butler, Jones, Lt. John Doe and Sgt. Jane Doe failed to monitor subordinates to verify if Defendants J. Fry, McIntyre and Carauna, were following the policies, procedure and post orders regarding the operation of the ISU unit." Doc. 44, at 4. He also claims that "Defendants Miller, Whitten, and Butler, are personal involved because they have to reveiw the inmates referral packet which gave them prior knowledge of the risk posed to Plaintiff." *Id.* Finally, Plaintiff terms an affidavit in the Special Report as "a self serving affidavit as to the training the Defendants J. Fry, McIntyre and Carauna received." *Id.* at 4-5. He contends "[t]here is no affidavit explaining the training/how they are trained for general population receation turn out and the training for high security areas recreation turn out." *Id.* at 5.

To establish § 1983 liability by Defendants as supervisors, Plaintiff must demonstrate an "affirmative link between the supervisor and the constitutional violation" with evidence of (1) the supervisor's personal involvement, (2) causation, and (3) a culpable state of mind. *Schneider v. City of Grand Junction Police Dep't*, 717 F.3d 760, 767 (10th Cir. 2013) (internal quotation marks

omitted). Even considering his newly-added, unverified factual allegations, Plaintiff does not meet this hurdle.

Plaintiff's only verified contention – "failure to train and supervise violated plaintiff Jones rights and constituted cruel and unusual punishment" – is wholly conclusory and without factual support. Doc. 1, at 6. Plaintiff fails to make any showing of what must be "essentially a complete failure to train, or training that is so reckless or grossly negligent that future misconduct is almost inevitable." *Currier v. Doran*, 242 F.3d 905, 925 (10th Cir. 2001) (internal quotation marks omitted).[10]

## IV. Recommendation and notice of right to object.

For the stated reasons, the undersigned recommends that Judge DeGiusti grant Defendants' motion for summary judgment, Doc. 63, and order judgment in their favor. The undersigned further recommends that Judge DeGiusti grant Defendants' motion for protective order, Doc. 60; deny Plaintiff's Motion (and Amended Motion) for Continuance of Summary Judgment to Permit Discovery, Docs. 68, 71; deny Plaintiff's motion for an extension of time to file a second response to the motion for summary judgment, Doc. 69; and deny Plaintiff's

_____

[10] Once again, regarding Plaintiff's remaining negligence claim against Defendants Fry, McIntyre, and Carauna, Doc. 1, at 6, a negligent failure to protect inmates from assaults by other inmates is not actionable under the Eighth Amendment. *Farmer*, 511 U.S. at 835.

Motion for an Order Compelling Discovery, Doc. 70. Finally, if this recommendation is adopted, Plaintiff's motion (under state court rules), Doc. 73, is moot.

The undersigned advises the parties of their right to file an objection to this Report and Recommendation with the Clerk of Court on or before May 17, 2015, in accordance with 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b)(2). The undersigned further advises the parties that failure to file a timely objection to this Report and Recommendation waives their right to appellate review of both factual and legal issues contained herein. *Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991).

This Report and Recommendation disposes of all issues referred to the undersigned Magistrate Judge in this matter.

ENTERED this 27th day of April, 2015.

SUZANNE MITCHELL
UNITED STATES MAGISTRATE JUDGE